# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

SECURITY PEOPLE, INC.

    Plaintiff-Appellant,

vs.

MICHELLE K. LEE, Director of the United States Patent and Trademark Office, *et al.*,

    Defendants-Appellees

No. 16-2378

Appellant's Position
Re: Summary Disposition

# I. INTRODUCTION

This Court ordered (doc 30) Appellant to brief why this case should not be summarily addressed.

First, this Court needs to address the fundamental issue as to whether it has jurisdiction. Appellant contends that this constitutional challenge is not within this Court's jurisdiction (28 U.S.C. §1295 (a)(1)), and must be remanded back to the 9th Circuit where appellant initially properly filed its appeal (28 U.S.C. §1294(a)).

Assuming jurisdiction is proper in this Court, appellant's constitutional challenge goes beyond issues addressed in MCM v. Hewlitt Packard 812 F. 3rd 1284 (2015 Fed. Cir.), to wit: the America Invents Act denies appellant equal protection of the law under the Fifth Amendment and equal access to the Courts under the First Amendment.

# II. THE COURT LACKS APPELLATE JURISDICTION

This case is one brought under the general laws, not the patent laws. Appellant's authority applies general constitutional principles restricting the Executive's ability to assert the judicial power. Legislation attempting to bestow such power must be invalidated. Similiarly, this case challenges the wrongful deprivation of Appellant's right to a jury trial under the Seventh

Amendment.

Appellant's claim arises directly under the U.S. Constitution under 28 U.S.C.§1337, not under U.S. Patent Law. Appellant is not seeking of interpretation of the Patent Law. Thus, the Federal Circuit has no jurisdiction over this appeal. Only the Ninth Circuit does. Appellant is the owner and practitioner of numerous patents it has invented, including US Patent 6,655, 180 issued on December 2, 2003. Appellee Ojmar has sought to invalidate the '180 Patent under the "*inter partes review*" process enacted by Congress in the 2011 "America Invents Act." *Inter Partes Review* is an administrative adjucation between private parties. Appellant has standing to challenge the constitutionality of *inter partes* review by the USPTO because it has suffered an injury-in-fact, in that appellee Ojmar petitioned for *inter partes* review of the '180 Patent, and based upon said petition, has obtained a stay of Appellant's Artice III patent infringement action, <u>Security People, Inc. v. Ojmar US, LLC, Northern District of California,</u> action no. 3:14-cv-04968, and a stay of the scheduled jury trial in that case that was scheduled for October, 2016. Appellant's district court action was filed months before Ojmar filed its petition for IPR.

The Federal Circuit has exclusive jurisdiction only in cases "arising under" an Act of Congress relating to patents, according to the express

restriction written into the relevant statute. 28 U.S.C. § 1295(a)(1). "'[A] case arises under the patent laws where 'a well-pleaded complaint establishes… that the federal patent law creates the cause of action.'" <u>Amity v. Met Quest,</u> *Amity Rubberized Oen Co. v. Mkt. Quest Crp. Inc.,* 793 F.3d 991, 994 (9th Cir. 2015). This case, in sharp contrast to those over which the Federal Circuit has exclusive jurisdiction, arises under the U.S. Constitution itself. Appellant solely presents a constitutional challenge to an Act of Congress. In so doing, it seeks application of general principles under the U.S. Constitution relating to Separation of Powers and the Seventh Amendment. Appellant does not ask, and has not asked, any court (here or below) to interpret or apply any disputed statutory term within the Patent Act at all.

More specifically, Appellant challenges the fundamental legality under the U.S. Constitution of a procedure known as *inter partes* review. Congress enacted *inter partes* review into the Patent Act in 2011, with the enactment of the America Invents Act. The relevant statutory provisions mostly exist at 35 U.S.C. §§ 311-319. 35 U.S.C. § 318(b) permits the USPTO – i.e. the Executive Branch – to "cancel" the private property of an issued patent. Cancellation occurs after an "adversarial proceeding" between private parties. The USPTO does not empanel a jury. Instead, a panel of

3

"administrative patent judges" makes the cancellation determination. These characteristics of *inter partes* review are undisputed.

Appellant invoked the general jurisdiction of the federal courts to decide constitutional questions under 28 U.S.C. § 1331.

The USPTO has argued that Appellant may raise its arguments within any direct appellate review of any adverse administrative decision. Even if this were relevant (and it is not), the jurisdictional statute establishing direct review to the Federal Circuit from administrative decisions limits the Federal Circuit's authority: it may review only "final written decisions" that emerge from *inter partes* review. 35 U.S.C. §§ 141(c), 319. Unlike the text of 35 U.S.C. § 1331, Congress did not give the *inter partes* review jurisdictional appeal statute any text that allows review of facial constitutional challenges to the Act itself. *See Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3150 (2010) (reaching Separation of Powers issue after determining that appellate review provision over final agency action did not cover facial constitutional challenges, so that provision's restrictions did not apply).

The Second Circuit rejected the USPTO's argument in a nearly identical context in *Disabled American Veterans v. U.S. Department of Veterans Affairs*, 962 F.2d 136, 143 (2d Cir. 1992). There, a statute

channeling review of "decisions of the [Secretary]" into the administrative process did not require dismissal of a district court action involving a facial challenge to the legislation itself. *Id.* ("Here, since the Veterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction to consider their claim.").

Under these general law principles, a patent, upon issuance, is not subject to revocation or cancellation by any executive agent, including by any part of the USPTO. *McCormick Harvesting Mach. Co. v. Aultman*, 169 U.S. 606, 609 (1898). The Executive Branch invades the province of Article III courts to cancel a patent as invalid during any kind of post-grant proceedings. *Id*. at 612.

> [W]hen a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, *it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government*. It has become the property of the patentee, and as such is entitled to the same legal protection as other property.

*Id.* at 608-09 (emphasis added, citations omitted). "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent." *Id.* Though the word "patent" appears

in these excerpts, the applicable jurisprudence grew out of, and applies equally to, *land* patents. These are not just "invention" patent concepts. *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 358-59 (1888) (discussing constitutional similarities between land and invention patents).

Though Appellant has raised general constitutional principles that any regional circuit court of appeals is competent to apply, the USPTO asserts that there is something exceptional about this case that makes the Federal Circuit the only proper reviewing court. Not so. Just because the constitutionality of the subject Patent Act will be the *object* of this Court's scrutiny does not make this case "arise under" it. For example, a breach of contract action for nonpayment of a patent license fee is still just a state law breach of contract action, even though the factual background includes patents. *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1021-23 (10th Cir. 2014) (following *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)) (holding Federal Circuit jurisdiction did not apply to breach of license agreement action because no infringement analysis was necessary, and denying motion to transfer appeal).

In *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004), the Court agreed, holding that a constitutional challenge to procedural actions of USPTO officials authorized by the Patent Act was not within Federal Circuit

jurisdiction. The fact that the Patent Act lay in the background did not deprive this Court of jurisdiction. *Id.* The same result applies here.

Appellant here makes a challenge under the U.S. Constitution to *undisputed* features of the Patent Act: (1) the fact of patent cancellation by the Executive under 35 U.S.C. § 318(b) after an adversarial proceeding, (2) the fact that juries do not make the decisions, (3) the fact that the IPR process uses different claim construction rules and and burden of proof , (4) the stautory collateral estoppel effect on Article lll litigation (35 U.S.C. § 315), and (5) the right to maintain to seek IPR relief (35 U.S.C. § 315) The absence of any need to interpret a disputed part of the Patent Act distinguishes this case from the USPTO's principal authority, *Madstad Engineering, Inc. v. U.S. Patent and Trademark Office*, 756 F.3d 1366 (Fed. Cir. 2014). *Madstad*, in turn, interpreted recent Supreme Court authority, *Gunn v. Minton*, 133 S. Ct. 1059 (2013), to reach its result. Therefore, to understand *Madstad* requires looking back to the controlling Supreme Court decisions that determined its result.

In *Gunn v. Minton,* the Supreme Court addressed the linguistically similar question of what kind of claim "arises under" the patent laws such that district courts may assert jurisdiction under 28 U.S.C. § 1338(a). The *Gunn* Court held that the legal malpractice claim before it did not arise under

7

federal patent law. This was so, even though the underlying claim required a "case within a case" to determine whether patent trial attorneys botched the presentation of a patent law doctrine, causing a patent to be found wrongly invalid.

At the outset, the *Gunn* Court identified two ways a case might "arise under" the patent laws – one common and one rare. The common way is when the patent laws create the cause of action (as with a typical patent infringement assertion). *Id.*, 133 S. Ct. at 1064. The rare way is when a claim may "arise under" the patent law even when it does not create the cause of action. The Court labeled this category "special," "small" and "slim." *Id.* In testing whether a claim fits the "special, small and slim" category whose origins are not in the patent laws themselves, the *Gunn* court applied the framework of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005). The *Grable* framework (previously applied to determine if a claim "arises under" generic federal versus state law) asks four questions about the putative federal issue: is it (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 133 S. Ct. at 1065 (discussing *Grable*). The *Gunn* claim failed the third and fourth tests. *Id.* at 1067. Thus, the patent litigation legal

malpractice case had to be heard in state court.

In *Madstad*, the Federal Circuit addressed its jurisdiction over review of a constitutional challenge to and interpretation of the "first inventor to file" provision of the America Invents Act (a provision not at issue here). *See Madstad*, 756 F.3d at 1370. The Federal Circuit held that the *Gunn/Grable* test *did* result in the case "arising under" the patent laws. As in *Gunn*, the Federal Circuit held that matters of patent law were necessarily raised and actually disputed. That was because "the constitutional challenge here would require [the Federal Circuit] to interpret the terms 'inventor' and 'first-inventor-to-file' under the AIA and to assess the interactions between those terms and the use of the term 'Inventor' in the Intellectual Property Clause of the United States Constitution – Article I, Section 8, Clause 8." *Id*. But contrary to *Gunn*, the Federal Circuit in *Madstad* went on to hold that the full *Grable* test was met. *Id.* at 1371.

Applying these principles here, this case does not fit within the "special, small and slim" category of cases that "arise under" the patent laws even though their origin is found elsewhere. No question of patent law is "necessarily raised and actually disputed." Appellant's claim does not seek or require an interpretation of any statutory term in the Patent Act or in the Constitution's Intellectual Property Clause. This case calls for a different

result from *Madstad.* This case presents the simple question of whether a new and undisputedly adjudicatory proceeding designed to invalidate certain patents – appropriately named "*inter partes* review" – improperly usurps Article III judicial power within the Executive Branch. It also asks whether the undisputed absence of juries from such proceedings violates patentees' rights under the Seventh Amendment to a jury's adjudication of patent validity. Thus, different from *Madstad* but the same as *Gunn*, the *Grable* test is not met and the Federal Circuit's jurisdictional power does not trigger.[1]

---

[1] The USPTO has correctly noted that the Federal Circuit reached and decided constitutional challenges to a different proceeding – *ex parte* reexamination. (Mot. 4, citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) and *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992)). But those cases did require interpretation of disputed Patent Act sections. *Patlex* required determination of the disputed question of whether the presumption of validity under 35 U.S.C. § 282 applies within patent reexamination under 35 U.S.C. § 301 *et seq.*, and what the answer signifies for patents that had issued before the 1980 enactment of reexamination. 758 F.2d at 605. Likeise, *Joy* required determination of the disputed question of whether the disclosure obligation codified in the Patent Act at 35 U.S.C. § 112, involves property separate from that in the patent claims that cannot be recaptured as trade secrets after USPTO reexamination cancels a patent. 959 F.2d at 229. These questions do not exist in this case. Thus, unlike here, *Patlex* and *Joy* fall into the *Madstad* category of cases requiring interpretation of disputed terms within the Patent Act. *MCM Portfolio, LLC v. Hewlett-Packard, Co.,* 812 F3rd 1284 (Fed Cir) is of no precedential value to the exclusivity of Federal Circuit jurisdiction, as that was not an issue on that case. USPTO's reference to the unpublished transfer order in Cooper v. Lee is not precedent.

Seeking to avoid this outcome, the USPTO's has asserted that the present case requires a court to determine the nature of the rights conferred on patent owners under the Patent Act and whether those rights constitute the sort of 'public rights' that Congress may permissibly delegate to a non-Article III tribunal for adjudication, citing a "public rights" case from the Supreme Court (*Stern v. Marshall*, 131 S. Ct. 2594 (2011) (dealing with tort counterclaims within bankruptcy proceedings)).

Even accepting the USPTO's characterizations, these issues lie at the heart of the purview of Article III constitutional courts, interpreting and applying the dictates of the U.S. Constitution and related Supreme Court jurisprudence. And, as cited above, the Supreme Court already made these determinations long before the enactment of the Patent Act of 1952 or the 2011 amendments under challenge here. "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent." *McCormick*, 169 U.S. at 608-09. The "public rights" argument simply calls for application of general constitutional law, not the patent law. Patents are provided for in the U.S. Constitution (Article 8, Section 3), with long established common law property pedigree.

Indeed, the Supreme Court had many chances to apply the "public rights" exception to patents, but did not. The "public rights" exception that sometimes permits Executive adjudication emerged at the same time as a strong and emphatic line of cases (culminating with *McCormick*) that unambiguously forbade Executive adjudication over the validity of government-issued private property (such as invention and land patents). Yet, the Supreme Court never once suggested that the "public rights" exception to the Separation of Powers requirement might apply. *Id.* Thus, the USPTO is wrong to suggest that this Court must "decide" whether the Constitution gives any leeway to Congress to remove private property validity adjudication from district courts and place it under the control of the Executive Branch. That issue has already been decided, as a matter of Supreme Court constitutional law, not patent law.

### III. THE AMERICA INVENTS ACT DENIES APPELLANT EQUAL PROTECTION OF THE LAW AND VIOLATES THE FIRST AMENDMENT

Under the Fifth Amendment, appellant is entitled to equal protection of the law Bowling v. Sharpe (1994) 347 U.S. 497. Appellant contends it has a fundamental right to equal justice (Griffin v. Illinois (1956) 391 U.S. 12, 16-17, 24. The differences between IPR and Article III determination of

obviousness and the attendant right to a jury trial to determine obviousness is discriminatory against appellant so as to deny it equal protection of the law.

It is undisputed that there are different levels of proof (clear and continuing v. preponderance of evidence), differences in claim construction (ordinary and customary v. broadest reasonable interpretation), differences in trier of fact (Article III judge and/or jury v. three executive branch panelist), differences in discovery (substantial under the federal rules v. very limited under the IPR process). These factors, individually and cumulatively, constitute unequal treatment of appellant without any rational basis, much less, the higher or strict scrutiny necessary due to the fundamental right to equal justice.

For similar reasons, the America Invents Act is unconstitutional in that it infringes on the appellant's fundamental constitutional right to petition under the First Amendment. Here, the America Invents Act co-opts the Article III judiciary process and right to jury trial, by facially discriminating when a party may invoke the IPR process (35 U.S.C. § 315) and by the application of estoppel to the Article III judiciary process.

As applied to appellant, by excercising its First Amendment right to petition in Federal Court by filing its patent infringement law suit, it has

been penalized by and under an IPR process due to the IPR's totally different and arbitrary standards of proof and claims construction, and by the IPR's process of denying appellant its Seventh Amendment right to have the jury decide the issue of obviousness. In contrast, appellee Ojmar is given the option to petition under in Federal Court or in the Patent Office (IPR), and thus, it has more rights to petition than appellant. There is no logical/rational basis for stacking the deck in favor of the appellee and against appellant's right to petition in Federal Court. The IPR process gives Ojmar unfair advantages and takes and denies appellant's right to petition in the Federal Judiciary with the attendant right to jury trial. The America Invents Act through it estoppel provisions (35 U.S.C. § 315) affirmatively deprise appellant the benefit of its Article III law suit. Also, the America Invents Act artificially discriminates by allowing Ojmar to file both a counter claim seeking invalidity for obviousness and a IPR petition (35 U.S.C. § 315). The direct effect of the America Invents Act is to discriminate against appellant's First Amendment rights and means of practicing them in favor of Ojmar's First Amendment rights. Such is impermissable under the First Amendment. See Police Department of City of Chicago v. Moseley (1972) 408 U.S. 92, and Moss v. U.S. Secret Service (9th Cir. 2012) 675 F. 3rd 1213.

## Conclusion

This appeal does not address or seek review or interpretation of any portion of Patent Act, but rather asserts a constitutional challenge to an Act of Congress under 28 U.S.C. § 1331. The object of that challenge is a statutory proceeding whose nature is undisputed, and requires no interpretation or application of the Patent Act. For the foregoing reasons, this case does not "arise under" the Patent Act, and this Court has full jurisdiction under 28 U.S.C. § 1291 to review it.

Assuming jurisdiction, this appeal tenders issues not addressed in <u>MCM v. Hewlett Packard</u>. Specifically, appellant contends that it has been denied equal protection of the law under the Fifth Amendment due process clause, and denied equal access and treatment to and in the court's in violation of the First Amendment right to petition.

Dated: December 13, 2016   Respectfully submitted,

         <u>/s/ Frear Stephen Schmid</u>
         Frear Stephen Schmid
         Attorney At Law
         177 Post Street, Suite 550
         San Francisco, CA 94108
         (415) 788-5957
         frearschmid@aol.com

         Attorney for Appelant
         Security People, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on December 13, 2016. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

          */s/ Frear Stephen Schmid*